# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

QUENTIN BIGBY,                      )
                                   )
    Plaintiff,              )
                                   )
v.                                 )          CV418-241
                                   )
DR. OLATUNJI AWE and               )
CYNTHIA RIVERS                     )
                                   )
    Defendants.             )

## REPORT AND RECOMMENDATION

Plaintiff Quentin Bigby, proceeding *pro se* and *in forma pauperis*, filed this civil rights case pursuant to 42 U.S.C. § 1983 related to his medical treatment while incarcerated at Coastal State Prison ("CSP"). *See generally* docs. 1 & 10.  Defendants filed a Motion for Summary Judgment, doc. 34, to which Bigby has responded, doc. 38, and defendants have replied, doc. 40.  The motion is ripe for disposition.

## I.   FACTUAL BACKGROUND[1]

Bigby was shot in 2009 and is wheelchair bound as a result.  Doc. 10 at 3; *see also* doc. 34-2 at 2.  The gunshot left him with a bruised spine

---

[1] The factual background is predominately taken from the defendants' Statement of Undisputed Material Facts.  Doc. 34-2.  Bigby has not controverted these facts.  *See* S.D. Ga. L. Civ. R. 56.1.  He concedes that he "does not disagree with most of the facts cited by Defendants in their Motion for Summary Judgment."  Doc. 38 at 8.  Instead,

and chronic nerve pain.  Doc. 34-2 at 2.  His pain is "constant," and radiates from his back down throughout his lower body.  Doc. 34-3 at 55. Prior to his current incarceration, doctors treated his pain with Gabapentin, Morphine, Percocet, Oxycodone, muscle relaxers, and a nerve-blocking shot.  Doc. 34-2 at 2.

Bigby was convicted and sentenced in 2018.  Doc. 34-2 at 3.  He initially entered the prison system at Jackson State Prison ("JSP").  *Id.* There, doctors treated his pain with naproxen, Cymbalta, and Lyrica.  *Id.* Medical staff at JSP also referred him to consult with a pain management specialist at Augusta State Medical Prison ("ASMP").  *Id.*  When he transferred to CSP that referral was still pending.  Doc. 34-3 at 76.

Bigby arrived at CSP on June 5, 2018.  Doc. 34-2 at 2; *see also* doc. 34-3 at 67.  Dr. Olatunji Awe was the medical director of that institution. Doc. 34-2 at 1.  After arriving at CSP, Bigby placed a sick call to be seen by Dr. Awe and his medical staff.  *Id.* at 3.  He testified during his deposition that he waited "two, three weeks" before he saw the doctor, but admitted that he could not "remember exactly."  Doc. 34-3 at 74.

he believes that the "genuine issues" in this case come down to the interpretation of these facts.  *Id.*

2

Records indicate that he was first seen by a member of the CSP medical staff on June 15, 2018.  Doc. 34-2 at 3; *see also* doc. 34-4 at 11.  During that visit, Bigby requested a vegan diet, informed the provider of his pain and prior treatment, and requested medication—preferably the pain medication he was receiving before his incarceration.  Doc. 34-2 at 3; doc. 34-3 at 66 (Bigby's testimony that his ideal "proper care and treatment" would have been the nerve shots and pain medication he was "receiving on the street.").  His treatment was not changed from that prescribed at JSP, pending his consult with the pain specialist at ASMP.  *Id.*

Bigby first saw the ASMP pain specialist ten days later, on June 25, 2018.  Doc. 34-2 at 4.  That specialist recommended increasing Bigby's Lyrica dosage, starting him on Baclofen, and providing a transcutaneous electrical nerve stimulation, or TENS, unit.  *Id.*  Dr. Awe saw Bigby the next day, on June 26, 2018, after he returned from ASMP.  *Id.*  At that time, Dr. Awe had not yet received the specialist's recommendations.  *Id.*  About three weeks later, on July 18, 2018, Dr. Awe increased Bigby's Lyrica dosage and prescribed Zanaflex.  *Id.*  About five weeks after that, on August 21, 2018, Dr. Awe ordered the recommended a TENS unit and

increased Bigby's dosage of Naprosyn and Cymbalta pain medications. *Id.*

On September 10, 2018, Bigby again visited Dr. Awe and complained that the Lyrica was not working and requested Neurontin, instead.  Doc. 34-2 at 4; *see also* doc. 34-3 at 110-11 (Bigby's testimony that "the Lyrica was not giving [any] relief at all, so that's when I asked Dr. Awe to put me back on my Neurontin . . . .").  Dr. Awe complied, but also referred Bigby back to the pain specialist at ASMP.  Doc. 34-2 at 4. Bigby visited the pain specialist on October 22, 2018, when the specialist recommended a consult with a neurosurgeon for a spinal cord stimulator procedure.  *Id.*  Two days later, on October 24, 2018, Dr. Awe wrote a consult for Bigby to visit the neurosurgeon at ASMP.  *Id.* at 5.

Bigby saw the neurosurgeon at ASMP on December 11, 2018.  Doc. 34-2 at 5.  The neurosurgeon referred Bigby to an outside clinic for a spinal cord stimulator procedure.  *Id.*  The consultation request for that outside clinic was written on December 14, 2018.  *Id.*  Before he made it to the outside clinic, though, Bigby requested that he instead try a Fentanyl patch.  *Id.*  So, Dr. Awe again sent him to the pain specialists at ASMP to discuss the preference for a Fentanyl patch over the spinal

cord stimulator. *Id.* Bigby's next visit with a pain specialist happened on January 16, 2019, during which the specialist recommended that Bigby maintain his current treatment, and not try a Fentanyl patch. *Id.* Dr. Awe requested another consult for Bigby to see the neurosurgeon about the spinal cord stimulator, but Bigby left CSP before that renewed consult could happen. *Id.* Bigby was transferred to a new institution on March 6, 2019. *Id.* at 6.

During the nine months Bigby was housed at CSP, he was dissatisfied with the treatment he was receiving from Dr. Awe and his staff. *See* doc. 10 at 4-8. He claims he submitted grievances complaining about delays in treatment, and not receiving what he considered "proper treatment," *see* doc. 34-3 at 104, 110, but that Defendant Cynthia Rivers, the head counselor and grievances coordinator, never "call[ed] [him] out" on those grievances, doc. 10 at 8. He then submitted a grievance complaining of CSP and Rivers' failure to respond to his initial grievance. Doc. 34-3 at 105. According to Bigby, when he raised this issue directly with Rivers, she claimed she had not received any of his grievances. *Id.* at 103-104. She instructed him to write another grievance, which he

hand-delivered directly to her.  *Id.* at 106.  He was transferred out of CSP shortly thereafter.  *Id.* at 108.

Bigby initially filed this lawsuit against Dr. Awe, claiming he had failed to sufficiently treat his pain.  *See generally* doc. 1.  The Court screened the Complaint and recommended it be dismissed for Bigby's failure to exhaust his administrative remedies.  Doc. 9 at 2-3.  Bigby objected and presented new allegations that Dr. Awe "refused to treat him because he has no fear of the consequences" and that Rivers' ignoring his many grievances "render[ed] the grievance procedure a sham."  Doc. 11 at 5.  The Court vacated its original recommendation and concluded that Bigby had adequately alleged that he had exhausted all grievance procedures such that his claims could proceed as to both Dr. Awe and Rivers.  *Id.* at 6.

## II.   ANALYSIS

### A.    Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the

governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *See id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does

exist.  *Anderson*, 477 U.S. at 257.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required."  *Morris v. Ross*, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* (emphasis and citations omitted).  Moreover, as defendants correctly point out, "[a]lthough all reasonable inferences are to be drawn in favor of the nonmoving party, 'an inference based on speculation and

conjecture is not reasonable.'" Doc. 40 at 2 (quoting *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013)).

As an initial matter, Bigby failed to accompany his response with a statement of material facts, in violation of this Court's Local Rule 56.1. Under that provision, every supported statement made by the moving party is deemed admitted unless specifically controverted by a statement served by the opposing party. S.D. Ga. L. Civ. R. 56.1. Not only did Bigby fail to controvert any of defendants' statements of material fact, *see generally* doc. 38, but he also expressly concedes that he does not disagree with those facts. S*ee supra* at 1 n. 1 (citing doc. 38 at 8). Despite his *pro se* status, the Court is empowered to deem defendants' facts as admitted. *See Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. July 14, 2014). Nevertheless, the Court is still required to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact, before granting summary judgment." *Id.* (quotations and citations omitted); *see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[S]ummary judgment, even when unopposed, can only be entered when

appropriate.").  Thus, the Court will proceed to consider the merits of the motion.

## B.    Eleventh Amendment Immunity

Defendants argue that any claim for damages against them in their official capacities, *see* doc. 10 at 2, are barred by the Eleventh Amendment.  Doc. 34-1 at 6.  Under the Eleventh Amendment, a "State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (internal quotation marks and citation omitted).  Eleventh Amendment immunity stays "in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted).  The bar to suit remains unless a waiver of immunity or congressional override exists. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  A State official sued in his official capacity is afforded this protection because a judgment against him would "impose[ ] liability on the entity that he represents." *Graham*, 473 U.S. at 169.

Here, the State of Georgia is the real party in interest in any claims against Defendants in their official capacities as employees of Georgia's

Department of Corrections.  *See Ferguson v. Ga. Dep't of Corr.*, 428 F. Supp. 2d 1339, 1352 (M.D. Ga. April 14, 2006) ("Official capacity suits for damages against employees of a state agency are suits against the state agency.  [Cit.]  A suit against a governmental entity which is considered an 'arm of the state'—such as the GDOC—is a suit against the State."). Absent a waiver of that immunity, Plaintiff cannot sustain any claims against them in their official capacities for monetary relief.  Therefore, any section 1983 claim for money damages against Defendants in their official capacities should be **DISMISSED**, and Defendants' motion for summary judgment on those claims should be **GRANTED**.  Doc. 34 (in part).

### C.    Eighth Amendment Claim

Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  The Eighth Amendment mandates that prison officials provide medical care and "must take measures to guarantee the safety of inmates."  *Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotations omitted).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Court cautioned, however, that not every allegation of inadequate medical treatment states a constitutional violation. *Id.* at 105. A prisoner plaintiff's mere disagreement with the medical care provided does not amount to a constitutional violation. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) ("However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'"). "Medical treatment violates the eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (internal citation omitted).

To survive summary judgment on his deliberate indifference claim against defendants, Bigby must: 1) satisfy an "objective component" by showing that he had a serious medical need; 2) satisfy a "subjective component" by showing that defendants' acted with deliberate indifference to his serious medical need; and 3) show that the injury was caused by the defendants' wrongful conduct. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). "A medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal citation omitted). If a prisoner satisfies this objective component, then under the subjective component he must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id.* at 1327.

The Court assumes for purposes of this analysis that, while he was confined at Coastal State Prison, Bigby was suffering from a serious medical need. Defendants seem to concede this point. Doc. 34-1 at 8. Indeed, the record is replete with Bigby's descriptions of "constant pain" and "hurting all night." *See* doc. 34-3 at 54. "Severe pain that is not

13

promptly or adequately treated can . . . constitute a serious medical need depending on the circumstances." *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016), *abrogation on other grounds recognized by Campoverde-Panora v. U.S. Attorney Gen.*, 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021). The issue, then, is whether either Awe or Rivers were deliberately indifferent to that serious medical need. They must each be considered separately, based on their own subjective knowledge. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

### 1. **Dr. Awe**

Bigby argues that Dr. Awe's delay in scheduling his "outside specialist appointments" and refusal to "carry out prescribed treatment plans ordered by outside specialists" constitutes deliberate indifference. Doc. 38 at 4. He contends that, without the "prescribed surgery" his pain and suffering has not only continued, but worsened. *Id.* at 3. He also suggests that he has not been prescribed any pain medication stronger than Tylenol. *Id.* In making this argument, Bigby admits that he "was not completely denied medical care." *Id.* at 12. He suggests, instead, that the treatment provided was not competent. *Id.* To support this suggestion, he provides "examples" of alleged incompetence: treatment

14

with pain medication that failed to relieve his severe pain and discomfort, repeated denial of surgery, and failure to create any other plan of treatment. *Id.* He succinctly explains his position: "[t]he conservative treatment he received was medically unacceptable under the circumstances." *Id.* at 13.

"[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.1989); *see Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (plaintiff received "significant" medical care while in jail, and although plaintiff "may have desired different modes of treatment," care provided "did not constitute deliberate indifference"). A difference in opinion between Dr. Awe and Bigby as to the course of treatment does not support a claim of cruel and unusual punishment. *Harris*, 941 F.2d at 1505. As the Eleventh Circuit has repeatedly explained:

> A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment. Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for

grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

*Bismark v. Fisher*, 213 F. App'x 892, 896 (11th Cir. 2007) (per curiam); *see also Butler v. Prison Health Servs., Inc.*, 294 F. App'x 497, 499 (11th Cir. 2008) (per curiam) (same).  So, any contention by Bigby that the treatment provided by Dr. Awe was too "conservative," *see* doc. 38 at 13, in addition to being conclusory, is simply not enough to impose liability under the Constitution.

Bigby also argues that Dr. Awe impermissibly denied him the medication and surgery he contends was necessary to treat his condition. Doc. 38 at 12.  He is correct that "prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257. But that is not what the record here shows.  Instead, the record shows that Bigby was seen by Dr. Awe (or, at least, a member of his medical staff) within 10 days of arriving at CSP.  Doc. 34-2 at 3.  There is nothing in the record to suggest that Dr. Awe was personally aware of Bigby, or his chronic pain, until then.  During that visit, Bigby was continued on the course of treatment already decided upon by medical providers at

JSP, at least pending the outcome of his upcoming consult with a pain specialist. *Id.* That course of treatment included two different types of narcotic pain medication along with naproxen. *Id.* Later that month, upon receiving that pain specialist's recommendations, Dr. Awe changed Bigby's treatment, adding a new prescription and increasing the dosage of another. *Id.* Dr. Awe also ordered Bigby a TENS unit at the pain specialist's recommendation. *Id.* All told, Bigby visited with a pain specialist three times during his 9-month stay at CSP, and each time Dr. Awe deferred to the expertise of those specialists. *Id.* at 6.

Dr. Awe also made changes to the prescribed course of treatment at Bigby's request – not once, but twice. First, he made the requested substitution of Neurontin for Lyrica. Doc. 34-2 at 4. After doing so, he even sent Bigby back to the pain specialist to discuss this change in treatment. *Id.* Then, after the pain specialist recommended a spinal cord stimulator procedure, and after Dr. Awe wrote the necessary consult for that to happen, Dr. Awe again listened to his patient and changed course, sending him instead for a consult to discuss his requested Fentanyl patch. *Id.* at 5. Ultimately, the pain specialist suggested that the initial course of treatment – the spinal cord stimulator—was still the best

option.  *Id.*  So, Dr. Awe again wrote a consult for Bigby to see the specialist who could make that happen.  *Id.*  "[Bigby] cannot claim the constitutional violation lies in delay when [Bigby] himself caused the delay in refusing adequate treatment."  *Lynch v. Jackson*, 478 F. App'x 613, 618 (11th Cir. 2012).

Dr. Awe's treatment of Bigby's chronic pain was not "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris*, 941 F.2d at 1505.  There is no genuine dispute that Dr. Awe actively attempted to treat Bigby's pain. The treatment he offered may not have been as effective or instantaneous as Bigby would have liked, but the fact that some of the treatment was ineffectual does not mean that Dr. Awe was deliberately indifferent.  *See, e.g., Massey v. Montgomery Cty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).  Dr. Awe's motion for summary judgment should be **GRANTED**.  Doc. 34 (in part).

### 2.   Cynthia Rivers

Rivers is the chief counselor and grievance coordinator at CSP.  Doc. 34-2 at 1.  Bigby's claim against her rests on her alleged refusal to respond to his grievances about the medical care being provided by Dr.

Awe and his staff.  Doc. 10 at 8.  According to Bigby, she "had knowledge of the need for medical care" and her intentional refusal to provide that care constitutes deliberate indifference.  *Id.* at 9.

"An Eighth Amendment 'medical treatment claim [will] not lie against non-medical personnel unless they were personally involved in the denial of treatment or deliberately interfered with prison doctors' treatment.  Prison officials are entitled to rely on the opinions, judgment and expertise of a prison medical staff to determine a medically necessary and appropriate cause of treatment for an inmate.' " *Truschke v. Chaney*, 2018 WL 814579, at *5 (S.D. Ga. Feb. 9, 2018), *adopted* 2018 WL 1513354 (S.D. Ga. Mar. 27, 2018) (quoting *Baker v. Pavlakovic*, 2015 WL 4756295, at *7 (N.D. Ala. Aug. 11, 2015)).  Here, Bigby does not allege that Rivers interfered with his treatment.  Instead, he argues that she was, or at least should have been, aware of his pain and she failed to do more.

The record does not support Bigby's allegation that Rivers intentionally disregarded or ignored his grievances.  According to Rivers, she has "no recollection or record of Inmate Bigby filing a grievance complaining about his medical care."  Doc. 34-5 at 4.  And Bigby's own testimony shows that he has no evidence to refute her contention.  *See*

doc. 34-3 at 102.  Moreover, even if Rivers had received any grievances complaining of medical care, she has no authority to intervene in the ongoing medical care of inmates.  Doc. 34-5 at 4.  Inmates seeking medical care must fill out a sick call, and those are handled exclusively through the medical office.  *Id.* at 3.  Any complaints about the course of treatment would be referred to the Warden and the Deputy Warden of Care and Treatment.  *Id.* at 4.

Bigby has not marshalled any evidence to support a constitutional claim against Rivers.  Because he has not demonstrated that she was deliberately indifferent to his serious medical need, Rivers' motion for summary judgment should be **GRANTED**.  Doc. 34 (in part).

## III.   CONCLUSION

Defendants Motion for Summary Judgment should be **GRANTED**. Doc. 34.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned

"Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED**, this 9th day of February, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA